## Inhabitants of GUILFORD *vs.* Inhabitants of ABBOTT.

If a pauper be likely to become chargeable to a town by falling into distress there, such town has a remedy, under the *stat.* 1821, *c.* 122, *by complaint* against the town wherein the pauper has his legal settlement, although a place has been provided for his support in the town where the settlement is.

If at the time of the trial, the removal of the pauper has already been effected, so that a warrant for his removal has become unnecessary, the complaint may still be prosecuted for the recovery of the expenses incurred.

If the complaint allege, that *the pauper was likely to become chargeable* to the town, it is competent for the Justice at the trial, to allow an amendment of the complaint by adding after *chargeable,* the words *by reason of age and infirmity.*

In a complaint under the *stat.* 1821, for the relief of the poor, *c.* 122, if the pauper be not summoned nor present at the trial, the judgment will not be reversed for such omission at the instance of the town where the settlement of the pauper may be.

WRIT of error to reverse the adjudication of REDINGTON J. in the Court of Common Pleas, that one *Andrews* had his legal settlement in *Guilford.* From the record it appears, that the complaint of the inhabitants of *Abbott* against the plaintiffs in error was instituted by the overseers of the poor, *June* 16, 1837, before a Justice of the Peace, for the removal of *Ephraim Andrews,* alleging, that his lawful settlement was in *Guilford,* and that he was likely to become chargeable to *Abbott* by reason of age and infirmity. It was admitted, that his legal settlement was in *Guilford.* It was proved, that at the time of filing the complaint he was over eighty years of age, had strength to perform some labor, and was abundantly able to travel from town to town, but for many years had no regular or stated business. More than twenty years before the adjudication, which was at *March Term,* 1838, *Andrews* was at one time so furiously mad, that the public security required him to be confined, and occasionally since that time, he has been deranged in mind. From *March* to *July* 1837, he was insane, roving in great destitution in several neighboring towns, and was in *Abbott* when the complaint was filed. He was a pensioner, receiving from the *United States* forty-eight dollars per year. In *February,* 1837, *Andrews* fell into distress in *Abbott,* and was relieved by the overseers to a small amount. The overseers of *Guilford* on

receiving notice of this expense repaid it, and caused *Andrews* to be removed to *Guilford,* and at the same time notified the overseers of *Abbott* that a place in *Guilford,* the house of one *Herring,* was provided for the maintenance of *Andrews,* and forbade any future expense to be incurred by *Abbott* on his account. In 1822 for some consideration paid by *Andrews,* a bond was given to him for his maintenance during life by *Herring.* Several years ago, *Andrews* without any just cause became dissatisfied with his treatment at *Herring's,* and since that time has wandered about from town to town. It was proved, that *Andrews,* while at *Herring's* house, had conducted with great impropriety, and was a very turbulent and quarrelsome old man. *Andrews* was not cited as a party or witness in this process. The complaint originally stated, that *Andrews* was likely to become chargeable, but did not state on what account, and was amended, on leave granted, by adding after *chargeable,* the words *by age and infirmity.* To this amendment the then defendants objected.

Upon this evidence, the Judge of the Common Pleas decided, that the complaint was sustained, and thereupon rendered judgment for the removal of *Andrews,* and that the complainants recover the expenses incurred in maintaining *Andrews* seventeen weeks subsequent to the filing of the complaint, amounting to forty dollars, and costs of process.

The errors assigned by the inhabitants of *Guilford* were : —

1. That *Andrews,* the pauper, had a place of residence provided for him in the town of *Guilford,* and therefore was not likely to become chargeable to any other town.

2. That he was at the time of the trial at the Court of Common Pleas, and for months before that time, in *Guilford* at the house provided for him.

3. That the complainants originally charged, that said *Andrews* was likely to become chargeable, and did not state from what cause he was likely to become chargeable, and did not assign any of the causes mentioned in the statute.

4. That said *Andrews* was not cited as a party or witness in the aforesaid process, and was not present at the hearing.

5. The general error.

Guilford v. Abbott.

*Tenney,* for *Guilford,* argued, that the defects pointed out in the assignment of errors, were sufficient to require the Court to reverse the judgment.   He cited *Walpole* v. *West Cambridge,* 8 *Mass. R.* 276.

*C. Greene,* for the original complainants, contended, that there was no cause for reversing the adjudication.

It is the duty of the town, where a pauper is found in want, to relieve him, and may recover it of the town where his settlement may be found.   The town cannot delay, and suffer the pauper to starve, while they inquire whether some person or other has agreed to support him.   Here the pauper was not only likely to become chargeable to *Abbott,* but had been so shortly before, and was again shortly afterwards.   *Stat.* 1821, *c.* 122, § 11.   If the pauper was at *Guilford* at the time of the trial, that does not take away the right to go on with the complaint.   It may proceed even after his death.   § 16.   This is not a criminal proceeding, but is subject to amendment like any other civil process.   The town and the pauper are independent parties, and it may be good as to one and bad as to the other.   It is not necessary to inquire whether the law requires an insane pauper to be notified, as he does not complain. It was decided as early as in *Shirley* v. *Lunenburgh,* 11 *Mass. R.* 379, that the town cannot take advantage of the omission to notify the pauper.   The part of the statute on which this decision was made has since been re-enacted in this State in the same words, and therefore with the construction put upon it at the time by the Court.

The opinion of the Court was drawn up by

WESTON C. J. — We are of opinion, that neither of the errors relied upon have been well assigned.   If the pauper was likely to become chargeable to the town complaining, by falling into distress there, they were bound to relieve him, under the act for the relief of the poor, *stat.* of 1821, *c.* 122, § 11, notwithstanding a place may have been provided for his support, in the town where he had his settlement.   And to be relieved from this liability, the remedy here pursued is given.

If at the time of the trial, his removal had already been effected, so that a warrant for that purpose was no longer necessary, the

complaint might however be prosecuted for the expenses incurred, as it may under the sixteenth section, where the pauper has actually deceased. The third error assigned is removed by the amendment, which in our judgment it was competent for the justice to allow. The complaint is a civil remedy, not a criminal prosecution. As to the omission to cite the pauper to appear, it was not to the prejudice of the plaintiffs in error. The pauper alone could avail himself of this error, as was directly decided in *Shirley* v. *Lunenburgh,* 11 *Mass. R.* 379. In regard to the proceedings under consideration, our statute is a transcript of that of *Massachusetts,* existing at the time of our separation.

*Judgment affirmed.*